UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INFECTOLAB AMERICAS LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARMINLABS GmbH, <br><br> Defendant. | Case No. 20-cv-03318-VKD <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 22 |

Plaintiffs Infectolab Americas LLC ("Infectolab") and IGeneX, Inc. ("IGeneX") filed this action alleging violation of the Lanham Act, 41 U.S.C. § 1125(a)(1), and asserting several state law claims for relief. Pursuant to stipulation (Dkt. No. 19), plaintiffs filed a First Amended Complaint ("FAC"), the operative pleading (Dkt. No. 20).

Defendant ArminLabs GmbH ("ArminLabs") now moves pursuant to Rule 12(b)(6) to dismiss three claims asserted only by Infectolab for intentional and negligent interference with prospective economic advantage and tortious interference with contract. Infectolab concedes the motion with respect to its claim for negligent interference with prospective economic advantage, but otherwise opposes ArminLabs's motion. Upon consideration of the moving and responding papers, as well as the arguments presented at the January 26, 2021 hearing, the Court grants ArminLabs's motion to dismiss with leave to amend.[1]

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 17.

## I. BACKGROUND

According to the FAC, Infectolab provides comprehensive laboratory testing for tick-borne infections and assists health care providers in diagnosing tick-borne diseases. Dkt. No. 20 ¶ 1. The FAC alleges that IGeneX also provides comprehensive laboratory testing services in the United States for tick-borne diseases. *Id*. ¶¶ 2, 17. ArminLabs, located in Augsburg, Germany, is alleged to be a competitor of Infectolab and IGeneX that provides diagnostic and testing services for tick-borne diseases. *Id*. ¶¶ 3, 7, 23.

The FAC alleges that Infectolab "has for years had the right to be the exclusive United States partner for various antigens and reagents (the 'Products') used to diagnose tickborne diseases developed by Autoimmun Diagnostika GmbH ('AID'), a German manufacturer." *Id*. ¶ 13. Further, Infectolab alleges that "[t]his understanding was reaffirmed" in a February 26, 2020 "Exclusive Supply Agreement" ("Agreement"), a copy of which is appended to the FAC. *Id*. According to the FAC, the Agreement "precludes the sale of the Products to any other third party who will 'directly or indirectly' use the Products to serve customers in the United States." *Id*. Infectolab claims that ArminLabs markets its testing services to customers in the United States, without proper compliance with federal regulations, and in violation of Infectolab's rights under the Agreement. *Id*. ¶¶ 3, 19-30. Relevant to the claims at issue in the present motion to dismiss, Infectolab alleges that ArminLabs markets its services and distributes blood test kits to physicians and patients in the United States, and sends drawn blood samples to its laboratory in Germany for testing, "us[ing] the Products to test the blood for various tick-borne illnesses." *Id*. ¶¶ 3, 22-23.

As noted, Infectolab agrees that its claim for negligent interference with prospective economic advantage should be dismissed without leave to amend. As for the claims for intentional interference with prospective economic advantage and tortious interference with contract, ArminLabs moves to dismiss pursuant to Rule 12(b)(6), arguing that both claims are based on a mischaracterization of the Agreement, as well as unsupported conclusory allegations. For the reasons discussed below, the Court grants ArminLabs's motion to dismiss with leave to amend.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).[2]

## III. DISCUSSION

### A. Terms of the Agreement

As an initial matter, ArminLabs argues that Infectolab's claims are not plausibly alleged

---

[2] In resolving the present motion, the Court finds it unnecessary to consider materials submitted by ArminLabs for judicial notice.

because they are based on allegations that are inconsistent with the terms of the Agreement. ArminLabs contends that those allegations need not be accepted as true. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating that on a Rule 12(b)(6) motion, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *see also Nguyen v. Bank of America, N.A.*, 563 F. Appx. 558 (9th Cir. 2014) (stating that "when an exhibit to a complaint is inconsistent with the complaint's allegations, the exhibit controls."). Infectolab maintains that its allegations are consistent with the Agreement. However, even if the Agreement may be subject to more than one interpretation, Infectolab argues that the scope and meaning of the Agreement's terms present "mixed questions of fact and law that cannot be properly determined at this stage in the proceedings; such issues are more appropriately addressed on a motion for summary judgment." *Beatty v. Tribune Media Services, Inc.*, No. CV 05-03938 DDP (SSx), 2005 WL 6132339, at *4 (C.D. Cal. Aug. 10, 2005).

The parties' arguments focus on section 2.01 of the Agreement, which provides:

> 2. **APPOINTMENT OF INFECTOLAB AS EXLCUSIVE CUSTOMER**
>
> 2.01 <u>Relationship</u>. Subject to the terms and conditions of this Agreement, Manufacturer [AID] hereby appoints Customer [Infectolab] as its exclusive customer of the Products in the Territory during the Term, and Customer hereby accepts such appointment (hereinafter the Subject to the terms and conditions of this Agreement, Customer shall have the sole right to use the Products in the Territory, and Manufacturer may not sell the Products to any third party, directly or indirectly. Except, Manufacturer can sell Products to other third parties exclusively for research studies and FDA approval studies.

Dkt. No. 20-1 at 3. The term "Products" refers to specific products listed in Schedule A to the Agreement. *Id*. at 2, 9. The term "Territory" is defined as "the states and territories of the United States of America." *Id*. at 3. The Agreement is fully integrated, with an initial term of five years from the February 26, 2020 effective date. *Id*. at 4, 7. In a clause beginning with the word "Whereas" and appearing at the end of the Agreement just above the signatures of AID's and Infectolab's representatives, the Agreement states that Infectolab "has been the exclusive customer

of [AID]'s Products (as such terms are defined below) since 13th of June 2018."³  Dkt. No. 20-1 at 7.

ArminLabs takes issue with a number of purported inconsistencies between the FAC's allegations and the Agreement's terms.  *See* Dkt. No. 22 at 7-8.  For present purposes, the Court focuses on the key allegations that ArminLabs contends are contradicted by section 2.01 of the Agreement.  Here, ArminLabs argues that while the FAC alleges that the Agreement prohibits a third party, including ArminLabs, from using the Products "directly or indirectly" in the United States (s*ee* Dkt. No. 20 ¶¶ 13, 19, 40, 79), the Agreement does not say anything about a third party's *use* of the Products "directly or indirectly" in the United States.  As noted above, section 2.01 of the Agreement contains two clauses, one of which grants Infectolab "the sole right to use the Products in the Territory," and the other which prohibits AID from *selling* the Products "directly or indirectly" to any third party, except for "research studies and FDA approval studies."  Dkt. No. 20-1 at 3.  At the motion hearing, Infectolab acknowledged that section 2.01, on its face, says that AID is prohibited from selling the Products "directly or indirectly."  Infectolab nevertheless maintains that if the Agreement is considered as a whole, section 2.01 means that AID cannot sell Products to any third party for use directly or indirectly in the United States.  ArminLabs argues that because this matter is not before the Court on a claim for breach of contract, no contract interpretation is necessary; and, in ArminLabs's view, section 2.01 unambiguously does not prohibit a third party's use of Products at all.  Yet both sides seem to acknowledge that the Agreement generally, and section 2.01 in particular, is not a model of clarity.  And inasmuch as each side's competing interpretation of the Agreement's terms pertain to the merits of Infectolab's claims that ArminLabs is interfering with Infectolab's rights under the Agreement, the Court does not find it appropriate to decide that question on a Rule 12(b)(6) motion.

However, even if the Court were to credit Infectolab's proffered interpretation of the Agreement, ArminLabs argues, persuasively, that the FAC's allegations are deficient for another

---

³ Other clauses beginning with "Whereas" appear at the beginning of the Agreement, and as discussed, the definition of the term "Products" also appears earlier in the Agreement.

reason: the FAC does not provide a factual basis for conclusory allegations that ArminLabs uses the reagents and antigens, i.e., the Products, developed by AID. In its papers Infectolab argued that it is "obviously implicit" from the FAC's allegations that ArminLabs "provides services to United States residents 'using' the Products." Dkt. No. 36 at 4. The FAC, however, does not allege that ArminLabs obtains Products from AID or any facts giving rise to a plausible inference that ArminLabs uses the Products to service customers in the United States. Given Infectolab's central premise that ArminLabs somehow interfered with its rights or relationship(s) that may be evidenced by the Agreement, Infectolab cannot simply leave such matters to inference. At oral argument, Infectolab represented that it does have additional facts that may be asserted in an amended pleading to address these issues. For the reasons discussed, the Court finds that amendment is warranted to clarify what specific conduct by ArminLabs interferes with which provisions of the Agreement, and how such conduct interferes with Infectolab's rights.

### B. Intentional Interference with Prospective Economic Advantage

To plead a claim for intentional interference with prospective economic advantage, Infectolab must allege (1) an economic relationship between Infectolab and some third party, with the probability of future economic benefit to Infectolab; (2) ArminLabs's knowledge of the relationship; (3) intentional acts by ArminLabs designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to Infectolab proximately caused by the acts of ArminLabs. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Additionally, the third element requires Infectolab to "plead intentional *wrongful* acts on the part of the defendant designed to disrupt the relationship," and those wrongful acts must be separate and apart from the interference itself. *Id*. at 1154. "The tort of interference with prospective economic advantage does not require proof of a legally binding contract[.]" *Milne Emp. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991). "'The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective.'" *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1151 (N.D. Cal. 2019) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118,

1126 (1990)). Even so, California law precludes recovery for overly speculative claims by "requir[ing] 'proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference.'" *Transcription Commc'ns Corp. v. John Muir Health*, No. C 08-4418 TEH, 2009 WL 666943, at *10 (N.D. Cal. Mar. 13, 2009) (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987)); *see also AlterG, Inc.*, 388 F. Supp. 3d at 1151 (same).

  ArminLabs contends that Infectolab has not pled sufficient facts to support any element of its claim for intentional interference with prospective economic advantage. With respect to the first element, ArminLabs argues that the FAC's allegations are too vague and conclusory to support the existence of an economic relationship with the probability of future economic benefit to Infectolab. Contending that the temporal scope of Infectolab's claim is unclear, ArminLabs expresses uncertainty whether the claim is based on the Agreement itself, or on the relationship allegedly existing prior to February 26, 2020 whereby Infectolab says that "for years" it had the "right to be the exclusive United States partner" for the Products. *See* Dkt. No. 20 ¶ 13. At oral argument, ArminLabs also noted that while Infectolab seems to claim interference based on Infectolab's relationship with AID, Infectolab's alleged harm appears to be based on the disruption to Infectolab's purported customer relationships.[4] The FAC alleges that Infectolab and AID entered into the Agreement, which purportedly reaffirmed a prior understanding between them. Infectolab has appended a copy of the entire Agreement to the FAC, and as discussed above the Agreement recites that Infectolab "has been the exclusive customer of [AID]'s Products . . . since 13th of June 2018." Dkt. No. 20-1 at 7. These allegations give rise to a reasonable inference of an economic relationship between Infectolab and AID, with the probability of future economic benefit to Infectolab based on its "sole right to use the Products" the United States. Dkt. No. 20 ¶¶ 64, 65, 79; Dkt. No. 20-1 at 3. However, to the extent the FAC suggests that this claim is based on ArminLabs's alleged interference with some other relationship, i.e., "Infectolab's relationships

---

[4] Additionally, ArminLabs questions Infectolab's use of the term "United States partner," the meaning of the term "exclusive customer" appearing in the Agreement, and whether any relationship prior to the Agreement's February 26, 2020 effective date may have belonged to Infectolab's parent company, Infectolab GmbH, which is not a party to this action. Such matters, however, go beyond the sufficiency of the pleadings, and the Court does not address those arguments here.

1    with potential customers" (Dkt. No. 20 ¶ 43), for the reasons discussed below the FAC's

2    allegations need to be clarified on amendment.

3          As for the remaining elements of a claim for intentional interference with economic

4    advantage, Infectolab has not alleged sufficient facts supporting a plausible claim for relief.  With

5    respect to the second element, knowledge of an injured party's identity or name is not a

6    prerequisite for recovery for intentional interference with prospective economic advantage.

7    *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (1986); *see*

8    *also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005 (stating that for a claim

9    for interference with contractual relations, "[w]hen the defendant performs the act that causes the

10   interference, the defendant need not know exactly who is a party to the contract, so long as he

11   knows he is interfering with a contractual relationship.").  Nevertheless, Infectolab's allegations

12   regarding ArminLabs's knowledge of the relationship between Infectolab and AID are entirely

13   conclusory.  *See, e.g.*, Dkt. No. 20 ¶ 41 ("With full knowledge of that relationship, Defendant has

14   intentionally engaged in the above scheme to use the Products to serve customers in the United

15   States."), ¶ 68 ("Defendant knew of Infectolab's contractual rights . . .").  Infectolabs contends that

16   the requisite knowledge may reasonably be inferred from the FAC's allegations that ArminLabs

17   had "prior dealings with Infectolab" and ArminLabs's "status as a competitor in the industry."

18   Dkt. No. 20 ¶ 80; *see also* ¶¶ 1, 3, 13, 19.  At the motion hearing, Infectolab also argued that it has

19   alleged substantive facts concerning a years-long business relationship between Dr. Schwarzbach

20   (ArminLabs's founder) and Dr. Carsten Nicolaus (Infectolab's founder).  However, the FAC

21   contains only a single conclusory allegation that Dr. Schwarzbach started ArminLabs "[a]fter

22   working with Dr. Carsten Nicolaus."  *Id.* ¶ 18.  These highly generalized allegations are

23   insufficient to plausibly establish ArminLab's knowledge of the relationship between Infectolab

24   and AID.  *See, e.g., Go Daddy Operating Company, LLC v. Ghaznavi*, No. 17-cv-06545-PJH,

25   2018 WL 1091257, at *10 (N.D. Cal. Feb. 28, 2018) (finding allegations that defendants queried a

26   public database were insufficient to plead defendants' knowledge of plaintiff's customer

27   relationships); *GSI Tech. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2014 WL 1572358,

28   at *7 (N.D. Cal. Apr. 18, 2014) (concluding that allegations that the defendant, "as an industry

participant," knew that non-compete agreements "are common" was not sufficient to support defendant's knowledge); *Trindade v. Reach Media Group, LLC*, No. 12-cv-04759-PSG, 2013 WL 3977034, at *15 (N.D. Cal. July 31, 2013) (finding that allegations that defendant was "aware of [plaintiff]'s strong reputation in the advertising industry" and the existence of [the multiple contractual relations with customers]" insufficient to establish knowledge). Moreover, to the extent Infectolab's claim is based on knowledge of the Agreement with AID (*see* Dkt. No. 20 ¶ 65), the FAC does not contain facts plausibly alleging ArminLabs's knowledge of that contract, where the Agreement itself contains a confidentiality clause prohibiting Infectolab and AID from disclosing the terms or the existence of the contract. Dkt. No. 20-1 at 1.

Having failed to sufficiently allege ArminLabs's knowledge of any economic relationship, Infectolab also fails to allege ArminLabs's intent to disrupt any such relationship. *Trindade*, 2013 WL 3977034 at *16. Additionally, to the extent Infectolab's claim rests on its contention that ArminLabs wrongfully used the Products, for the reasons discussed above the FAC's allegations are insufficient to state a plausible claim for relief.

Infectolab also does not allege sufficient facts supporting the actual disruption of an economic relationship or the harm to Infectolab proximately caused by ArminLabs's conduct. The FAC alleges, in conclusory fashion, that ArminLabs "has caused breach or disruption of [the Agreement] and resulted in damages to Infectolab" and that ArminLabs's conduct "constitutes an injurious interference with Infectolab's prospective business advantage" based on its "existing and prospective business relationship with AID[.]" Dkt. No. 20 ¶¶ 42, 64, 66. However, Infectolab does not allege sufficient facts demonstrating how its relationship with AID (contractual or otherwise) has been affected, if at all, to Infectolab's economic detriment. Indeed, the FAC indicates that Infectolab continues to enjoy an ongoing business relationship with AID. *See, e.g., AlterG, Inc.*, 388 F. Supp. 3d at 1151-52 (concluding that the plaintiff failed to allege actual disruption or harm where it had an ongoing contract with the third party).

Emphasizing that it "is the *exclusive* entity that may use the Products to offer services to United States customers," Infectolab argues that it has sufficiently alleged that it suffered financial losses as a result of ArminLabs's conduct, namely that "it has been—and will continue to be—

unable to enjoy the fruits of its exclusive Agreement with AID and that it has suffered economic harm as a result." Dkt. No. 36 at 9.  Infectolab correctly notes that courts have not required a plaintiff to plead the specific identity of lost customers and that, for claims of interference with contractual relationships, it may suffice for a plaintiff to plead that the defendant's conduct made the plaintiff's contract performance more expensive or more difficult.  *See Park Miller, LLC v. Durham Group, Ltd.*, No. 19-cv-04185-WHO, 2020 WL 1955652, at * (N.D. Cal. Apr. 23, 2020) (finding that plaintiff stated a claim for interference with contractual relations where plaintiff alleged that defendant's conduct made plaintiff's contract performance more expensive and difficult, leading to the loss of at least six clients)*; Storm Mfg. Group Inc. v. Weather Tec Corp.*, No. CV 12–10849(CAS) (FFMx), 2013 WL 5352698, at *7-*8 (C.D. Cal. Sept. 23, 2013) (finding that plaintiff stated a claim for intentional interference with prospective economic advantage where the plaintiff alleged that defendant's conduct led to the loss of existing relationships with various customers and distributors, and did not merely allege interference with plaintiff's relationship with the general market).  Infectolab, however, has not alleged facts supporting its claims of lost sales, and has not even alleged that its sales have decreased.  Nor has Infectolab alleged facts demonstrating that ArminLabs's conduct has made Infectolab's contractual performance more difficult or expensive.  Instead, Infectolab's allegations of harm are entirely conclusory and are based on Arminlabs's alleged "interfere[nce] with Infectolab's relationships with potential customers." Dkt. No. 20 ¶ 43.  Such allegations are insufficient.  *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F. Supp. 1303, 1312 (N.D. Cal. 1997) ("Even if interference with potential customers is a legitimate basis for tortious interference with economic relations, the complaint alleges only conclusory statements and no facts in support of its contention that it lost potential customers.").  While the FAC also alleges that ArminLabs "has unlawfully captured a share of the market that should belong to Infectolab" (Dkt. No. 20 ¶ 43), other allegations indicate that any purported lost customers or market share do not necessarily belong to Infectolab.  *See* Dkt. No. 20 ¶ 39 ("Upon information and belief, at least some of those consumers would not have purchased Defendant's services, and would have instead purchased services from Plaintiffs Infectolab and IGeneX, but for Defendant's misconduct.").

For these reasons, ArminLabs's motion to dismiss Infectolab's claim for intentional interference with prospective economic advantage is granted.

### C.     Tortious Interference with Contract

To state a claim for tortious interference with contractual relations, Infectolab must plead facts demonstrating (1) a valid contract between plaintiff and a third party; (2) ArminLabs's knowledge of this contract; (3) ArminLabs's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *AlterG, Inc.*, 388 F. Supp. 3d at 1149.  The tort of intentional interference with contract is closely related to the tort of intentional interference with prospective economic advantage, and the two causes of action share many of the same elements. *Transcription Commc'ns Corp.*, 2009 WL 666943 at *8; *see also Robi v. Five Platters, Inc.*, 918 F.3d 1439, 1442 n.4 (9th Cir. 1990).

For the same reasons discussed above, while Infectolab has pled the existence of a contract with AID, it has otherwise failed to plead sufficient facts plausibly supporting the remaining elements required for the tort of interference with that contractual relationship.  ArminLabs's motion to dismiss this claim is granted.

### D.     Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).  "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

At oral argument, Infectolab indicated that there are additional facts it can allege to clarify the deficiencies addressed in this order, including with respect to the harm Infectolab reportedly

has suffered as a result of ArminLabs's conduct.  Because the Court cannot rule out the possibility that the FAC's allegations may be clarified on amendment, Infectolab is given leave to amend.

## IV.   CONCLUSION

Based on the foregoing, ArminLabs's Rule 12(b)(6) motion is granted as follows: Infectolab's claim for negligent interference with prospective economic advantage is dismissed without leave to amend.  Infectolab's claims for intentional interference with prospective economic advantage and tortious interference with contract are dismissed with leave to amend.  If Infectolab chooses to amend these two claims, its Second Amended Complaint must be filed by **February 11, 2021.**

**IT IS SO ORDERED.**

Dated: January 28, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge