UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INFECTOLAB AMERICAS LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARMINLABS GMBH,<br><br>    Defendant. | Case No. 20-cv-03318-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 51 |

## I.  BACKGROUND

Plaintiffs Infectolab Americas LLC ("Infectolab") and IGeneX, Inc. ("IGeneX") filed this action alleging violation of the Lanham Act, 41 U.S.C. § 1125(a)(1), and asserting several state law claims for relief.[1]  The Court previously granted a Rule 12(b)(6) motion by defendant ArminLabs GmbH ("ArminLabs") to dismiss three claims asserted only by Infectolab for intentional and negligent interference with prospective economic advantage and tortious interference with contract.  Infectolab conceded the motion with respect to its claim for negligent interference with prospective economic advantage, which was dismissed without leave to amend.  The Court dismissed the claims for intentional interference with prospective economic advantage and for tortious interference with contract with leave to amend.  Dkt. No. 43.

Plaintiffs filed a Second Amended Complaint ("SAC") in which Infectolab reasserts its claims for intentional interference with prospective economic advantage (Count IV) and tortious

---

[1] The Court incorporates by reference the statement of background facts in its prior order (Dkt. No. 43 at 2) and assumes the parties' familiarity with those facts, which will not be repeated in this order.

1  interference with contract (Count V). Dkt. No. 50. Infectolab also adds a claim for declaratory
2  relief (Count VI), seeking "judgment that its contract with AID [Autoimmun Diagnostika GmbH]
3  gives it the exclusive right to use the Products to test residents of the United States," and that
4  ArminLabs's "continued use of the Products to provide testing services to residents of the United
5  States both tortuously [sic] interferes with [Infectolab's] contractual rights with AID as well as
6  interferes with [Infectolab's] business relationships." *Id*. ¶ 85. ArminLabs moves once again,
7  pursuant to Rule 12(b)(6) to dismiss the interference claims for failure to allege sufficient facts
8  stating a plausible claim for relief. Specifically, ArminLabs argues that the SAC fails to
9  sufficiently allege the disruption of any contract or economic relationship or demonstrating any
10 economic harm. Additionally, ArminLabs moves to dismiss the declaratory judgment claim as
11 needlessly duplicative and on the ground that Infectolab has not plausibly alleged any claim for
12 interference. Infectolab opposes the motion. Upon consideration of the moving and responding
13 papers,[2] as well as the arguments presented at the motion hearing, the Court grants ArminLabs's
14 motion to dismiss in part and denies it in part.[3]

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover,

---

[2] After the motion hearing, and without leave of court, ArminLabs filed a supplemental brief in support of its motion to dismiss. Dkt. No. 56. While the Court has considered ArminLabs's unauthorized filing, it does not condone ArminLabs's failure to seek leave beforehand and warns ArminLabs against future noncompliance with the Court's rules. *See* Civil L.R. 7-3(d).

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 17.

2

"the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

### III. DISCUSSION

The tort of intentional interference with contract is closely related to the tort of intentional interference with prospective economic advantage, and the two causes of action share many of the same elements. *Robi v. Five Platters, Inc.*, 918 F.3d 1439, 1442 n.4 (9th Cir. 1990); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). "The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1126; *see also AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1151 (N.D. Cal. 2019) (same).

**A. Count IV: Intentional Interference with Prospective Economic Advantage**

To state a claim for intentional interference with prospective economic advantage, Infectolab must allege (1) an economic relationship between Infectolab and some third party, with the probability of future economic benefit to Infectolab; (2) ArminLabs's knowledge of the relationship; (3) intentional acts by ArminLabs designed to disrupt the relationship; (4) actual

disruption of the relationship; and (5) economic harm to Infectolab proximately caused by the acts of ArminLabs. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Additionally, the third element requires Infectolab to "plead intentional *wrongful* acts on the part of the defendant designed to disrupt the relationship," and those wrongful acts must be separate and apart from the interference itself. *Id*. at 1154. The tort of "interference with prospective advantage does not require proof of a legally binding contract." *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1126. "Nevertheless, courts have made clear that '[t]he law precludes recovery for overly speculative expectancies by initially requiring proof' that it is 'reasonably probable that the prospective economic advantage would have been realized but for defendant's interference.'" *AlterG, Inc.*, 388 F. Supp. 3d at 1149 (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996)).

At the motion hearing, Infectolab confirmed that this claim is based solely on its economic relationships with customers, and not on Infectolab's February 26, 2020 "Exclusive Supply Agreement" ("Agreement") or relationship with AID. Dkt. No. 55. Here, Infectolab says that there are at least nine United States customers who previously used ArminLabs's testing services, but who began using Infectolab's services after March 2020 when ArminLabs stopped accepting blood samples from the United States due to the COVID-19 pandemic. Dkt. No. 50 ¶¶ 44-45. Of these nine customers, the SAC alleges that there are two clinics—one in the northeastern United States and another in Florida—to which Infectolab previously had marketed its services. Although the northeastern clinic reportedly expressed interest in Infectolab's services, both clinics declined Infectolab's business in favor of ArminLabs's cheaper prices. The SAC further alleges that when ArminLabs stopped accepting blood samples from the United States, these two clinics began using Infectolab's services. *Id*. Infectolab claims that these customers' current use of Infectolab's services "demonstrates that there is a substantial portion of the market that would use [Infectolab]'s testing services (for which the Products would be used) but for [ArminLabs]'s improper use of the Products." *Id*. ¶ 45.

ArminLabs moves to dismiss this claim, arguing that Infectolab fails to identify any customers with whom it had an *existing* relationship, or any protected expectancy of business, at

4

the time of ArminLabs's alleged interference. Indeed, courts have held that "that the 'relationship' that forms the basis of the intentional interference tort must have existed at the time of the allegedly tortious conduct." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 997 (N.D. Cal. 2014) (citing cases). Here, the SAC suggests that the alleged interference occurred at least as recently as 2019, when Infectolab says it marketed its testing services to the clinic in the northeastern United States. Dkt. No. 50 ¶ 44. There is no allegation that Infectolab had an existing relationship with that clinic, or any other customer referred to in the SAC, at the time of ArminLabs's alleged interference. And at oral argument, Infectolab confirmed that it is not claiming that it had any such existing relationships at that time. Dkt. No. 55. Simply alleging relationships with potential customers is insufficient to state a claim because "[n]ot requiring an allegation of an existing relationship 'allows recovery no matter how speculative the plaintiff's expectancy. It assumes what normally must be proved, i.e., that it is reasonably probable the plaintiff would have received the expected benefit had it not been for the defendant's interference.'" *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2013 WL 5694452 at *21 (N.D. Cal. Oct. 18, 2013) (quoting *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 523).

Infectolab nonetheless contends that it has alleged a plausible claim based on a "protected expectancy" of business with customers in the United States. *See Swingless Golf v. Taylor*, No. C 08–05574 WHA, 2009 WL 2031768, at *4 (N.D. Cal. July 7, 2009) ("[I]t is well settled in California that a plaintiff must establish an existing economic relationship or a protected expectancy with a third person, not merely a hope of future transactions."). Here, Infectolab argues that it had such a "protected expectancy" of business based on its claimed exclusive right to "use the Products to offer services to United States customers" under the Agreement with AID. Dkt. No. 52 at 8. The SAC's allegations, however, indicate that the United States market in question consists of "physicians and patients" generally, who may choose services from suppliers other than Infectolab, including plaintiff IGeneX, who also competes with Infectolab regarding tick-borne illness testing services and is not alleged to use any AID Products. *See* Dkt. No. 50 ¶¶ 16, 22, 25-26, 29-30, 33-35. Infectolab's claim of interference with customers is based on

1   hindsight and the fact that it was able to establish certain customer relationships in the wake of the
2   COVID-19 pandemic.  At best Infectolab has alleged a hope of future transactions in the general
3   market for tick-borne illness testing services, which is insufficient to establish a basis for a
4   plausible claim for relief.  The law "'protects the expectation that the relationship will yield
5   desired benefit not necessarily the more speculative expectation that a potentially beneficial
6   relationship will eventually arise.'"  *O'Connor*, 58 F. Supp. 3d at 997 (quoting *Westside Ctr.*
7   *Assocs.*, 42 Cal. App. 4th at 524).

The SAC thus fails to state a plausible claim for intentional interference with prospective economic advantage based on alleged relationships with customers, and ArminLabs's motion to dismiss that claim is granted.  Infectolab having already had an opportunity to amend this claim, and there being no indication that Infectolab has additional facts it may allege to remedy the defects addressed in this order, its claim for interference with prospective economic relationship is dismissed without leave to amend.

### B.   Count V:  Tortious Interference with Contract

To state a claim for tortious interference with contractual relations, Infectolab must plead facts demonstrating (1) a valid contract between plaintiff and a third party; (2) ArminLabs's knowledge of this contract; (3) ArminLabs's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1126; *AlterG, Inc.*, 388 F. Supp. 3d at 1149.  Infectolab bases this claim on its Agreement with AID.  Dkt. No. 50 ¶¶ 74-80; Dkt. No. 50-1.  The SAC alleges that ArminLabs's conduct "has resulted in a disruption of [Infectolab's] contractual relationship and has interfered with [Infectolab's] right to be the party with the exclusive right to use the Products to provide testing services to residents of the United States."  Dkt. No. 50 ¶ 78.  ArminLabs moves to dismiss this claim on the ground that the SAC does not allege sufficient facts demonstrating any disruption in Infectolab's Agreement with AID.

"To state a claim for disruption of a contractual relation, the plaintiff need not show the defendant induced an actual or inevitable breach of the contract.  It is sufficient to show the defendant's conduct made the plaintiff's performance, *and inferentially enjoyment*, under the

contract more burdensome or costly." *Golden West Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 51 (1994) (emphasis added). Infectolab has not alleged any facts demonstrating that its ongoing supplier relationship with AID has changed or been harmed in any way. *See AlterG, Inc.*, 388 F. Supp. 3d at 1152 ("The complaint does not allege that Defendants intentionally acted to disrupt Woodway's supply of treadmills to AlterG, or that the supply was actually disrupted. Indeed, [t]o this day, Woodway continues to supply treadmills to AlterG.") (quotations omitted). While Infectolab argues that its "ability to perform under the [A]greement has become more costly, as a result of [ArminLabs]'s conduct" (Dkt. No. 52 at 5), the SAC, including the particular paragraphs cited by Infectolab (*see* Dkt. No. 50 ¶¶ 41, 68-70, 76), alleges no such facts. And at oral argument Infectolab confirmed that it is not claiming that it has been unable to perform its contractual obligations due to ArminLabs's alleged conduct. Dkt. No. 55.

Infectolab nonetheless claims that the value of its Agreement with AID has diminished as a result of ArminLabs's conduct. Here, Infectolab alleges that ArminLabs interfered with Infectolab's "exclusive right to use the Products to provide testing services to residents of the United States," and that Infectolab "has been forced to engage in expensive, time consuming, and often unsuccessful marketing and sales efforts in order to attempt to secure customers who are using [ArminLabs]'s testing services for which the Products would be used." Dkt. No. 50 ¶¶ 47, 78. ArminLabs argues that "there is no benefit that Infectolab expects to receive from AID beyond a supply of AID products." Dkt. No. 53 at 4. However, under Infectolab's interpretation of the Agreement, which for purposes of resolving the present motion is deemed true,[4] Infectolab's expected benefits under the Agreement include not merely a supply of Products from AID, but also the "exclusive right to use the Products to provide testing services to residents of the United States." Dkt. No. 50 ¶ 78; *see also* Dkt. No. 50-1.

Contending that sales and marketing efforts do not form any part of Infectolab's contractual obligations to AID for which Infectolab can plausibly expect any benefit in return,

---

[4] The parties dispute the meaning of the Agreement's terms, including Infectolab's contentions regarding its "sole right to use the Products in the Territory" (*see* Dkt. No. 50-1 section 2.01), and ArminLabs insists that it does not use the Products in the United States. Whether Infectolab will succeed in proving its claim, however, is a question for another day.

7

ArminLabs maintains that any alleged diminution in contract value necessarily must flow from increased burdens or costs in Infectolab's performance under the Agreement. Dkt. No. 56 at 1. While cases cited by the parties do concern contractual performance, at least some decisions seem to broadly recognize that "a claim for intentional interference is viable if the defendant's conduct renders the contract less valuable to the plaintiff," where "a non-party to the contract interferes with the contracting parties' expectations regarding their relationship, making the contract less valuable to the plaintiff (either by increasing its obligations *or* decreasing the benefit it expects in return)." *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, No. CV 11-1539 MMM (JEMx), 2013 WL 12244056, at *35 (C.D. Cal. June 12, 2013) (emphasis added); *see also Upper Deck Co. v. Panini Am., Inc.,* 469 F.Supp.3d 963, 982 (S.D. Cal. 2020) ("Where interference makes *enjoyment of a contract* 'more expensive or burdensome' there may be actionable disruption; an actual breach of a contract is not required.") (emphasis added) (citing *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1127); *De Jur-Amsco Corp. v. Janrus Camera, Inc*., 155 N.Y.S.2d 123, 125-126 (N.Y. Sup. Ct. 1956) (granting temporary injunctive relief where the plaintiff showed that its contractual performance was more difficult and defendant's sales interfered with the plaintiff's exclusive distributorship contract with a third party, making the contract of less value), cited with approval by *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1129 n.7.  Here, Infectolab alleges that ArminLabs has interfered with Infectolab's exclusive right under the Agreement to use AID Products to provide testing services to United States residents, in effect undermining the exclusivity of that right, requiring Infectolab to compete with ArminLabs for customers in the United States, and rendering the Agreement less valuable. Construing the SAC's material allegations as true and construing them in the light most favorable to Infectolab, as this Court is obliged to do on the present motion, the Court finds that Infectolab has for pleading purposes alleged sufficient facts to state a claim for tortious interference with contract. ArminLabs's motion to dismiss this claim is denied.

### C. Count VI: Declaratory Judgment

ArminLabs moves to dismiss Infectolab's claim for declaratory relief, arguing that it is needlessly duplicative of Infectolab's interference claims. "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v.*

*Washington Mut. Bank*, 637 F.Supp.2d 700, 707 (N.D. Cal. 2009). "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. As discussed above, the Court has granted ArminLabs' motion to dismiss the claim for intentional interference with prospective economic advantage, without leave to amend. As for Infectolab's claim for tortious interference with contract, the Court concludes that the claim for declaratory relief is duplicative, and Infectolab has not persuasively shown that its claim for declaratory judgment is otherwise appropriate with respect to potential future conduct by ArminLabs that has not yet occurred and where ArminLabs is not a party to the Agreement. ArminLabs's motion to dismiss this claim is granted without leave to amend.

## IV.   CONCLUSION

Based on the foregoing, ArminLabs's motion to dismiss is granted in part and denied in part as follows: ArminLabs's motion to dismiss Count IV for intentional interference with prospective economic advantage and Count VI for declaratory judgment is granted without leave to amend. ArminLabs's motion to dismiss is denied with respect to Count V for tortious interference with contract.

**IT IS SO ORDERED.**

Dated: April 21, 2021

*[signature]*
VIRGINIA K. DEMARCHI
United States Magistrate Judge